NOT DESIGNATED FOR PUBLICATION

No. 124,384

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGELA MARIA SALAZAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Opinion filed July 29, 2022. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Christopher Lyon*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Requests for appellate courts to reweigh the evidence are seldom successful. Angela Maria Salazar appeals her conviction of driving under the influence (DUI), in essence asking us to reweigh the evidence presented to the jury. Because the evidence was sufficient to conclude Salazar was operating her vehicle while under the influence of alcohol to a degree which rendered her incapable of safely operating her vehicle, we affirm the jury's verdict.

1

FACTS

In June 2016 at around 6 a.m., Salazar and her friend, Amber Taylor, went to Burger King in Salazar's car to get food at the restaurant's drive-through window. Burger King employee Kelsey Davis took Salazar's order and met her and her passenger at the window.

Salazar eventually became upset and started banging her hands on the drive-through window. Davis told Salazar to pay for the order or leave the drive-through or she would contact the police. Salazar refused to comply with Davis' request, so Davis called the police.

Officer Dustin Grace responded to Davis' report. When Grace arrived at the Burger King, he saw Salazar standing in front of the drive-through window with one foot on the ground and the other foot in the driver's side of Salazar's car, which Grace noted was running at that time. Grace also observed Salazar doing something at the window while her passenger was sitting in the front passenger seat of the car with the door closed. Salazar was yelling when Grace made his first contact with her. Grace asked Salazar to speak with him by his patrol vehicle to figure out what was going on. Grace then noticed that Salazar had glassy, bloodshot eyes and was also very "hostile and upset."

Based on his observations, Grace believed Salazar might be intoxicated and asked her to complete standardized field sobriety tests. Salazar agreed. According to Grace, Salazar failed both tests. He concluded Salazar was too intoxicated to operate her car safely and placed her under arrest. Salazar became hostile again and fought against Grace's attempts to place her in his patrol vehicle. As Grace was placing Salazar in his patrol vehicle, Grace noticed a "strong odor of alcohol coming from her breath." Salazar admitted to Grace she had been driving her car.

Around this time, Officer William Linn arrived at the scene. Before taking over the investigation, Linn left Grace and Salazar alone in the Burger King parking lot. Meanwhile, Linn obtained a statement from Davis, in which she explained the driver she reported—later identified as Salazar—became upset after she told Salazar she would have to leave the Burger King if she could not pay. When Linn first approached Salazar, he did not smell alcohol. But as they spoke, he eventually "smelled an odor that [in his] experience and training [as a police officer he] associated with alcohol." Salazar admitted to Linn she had been drinking starting sometime after midnight, but she denied she had been driving that day.

Salazar was charged with one count of DUI, a fourth or subsequent conviction, under K.S.A. 2015 Supp. 8-1567(a)(3) and (b)(1)(E).

At trial, the State's evidence consisted of the video recording from Grace's patrol vehicle dash camera and Linn's body camera along with the testimony of Davis, Grace, and Linn.

Grace testified Salazar admitted to him she drove to the Burger King and, even though he did not notice Salazar's speech was slurred, he still believed she was intoxicated based on the totality of circumstances, including Salazar's behavior, bloodshot and glassy eyes, her chewing gum, and her failed field sobriety tests.

Regarding the walk-and-turn test, Grace testified Salazar failed to maintain a heel-to-toe stance as instructed. She also started walking before instructed, took too many steps, made an improper turn, and used her arms to balance herself while walking. These errors indicated five of the eight clues of impairment associated with the test. On the one-leg standing test, Grace's testimony reflected Salazar exhibited one clue of impairment out of four clues because she used her arms to balance herself.

Linn's testimony was similar to Grace's, and he explained Salazar was less hostile with him. Linn also testified Salazar admitted to drinking that morning. He explained that at the police station following Salazar's arrest, he informed Salazar that Grace would need to perform an Intoxilyzer breath test on her. Salazar became "extremely upset" and "hostile," which indicated to Linn that Salazar would not perform the Intoxilyzer breath test or any other testing. Salazar, in her briefing, admits she refused to do any more testing at the police station.

Salazar told the jury she got off work at around 1 a.m. that morning. She then went to a coworker's house to "have a couple drinks." After having "two shots of something" at around 1 or 1:30 a.m., she went to a separate room and fell asleep. She got up briefly between 3 and 4 a.m. to eat something before going back to sleep. She then left the house at around 5:45 a.m. with Taylor to go to work. They left in Salazar's car but, according to Salazar, Taylor drove because she was going to borrow the car while Salazar was at work.

Salazar also provided the jury with an explanation for her "irritated" behavior. She testified that on her way to work she called the restaurant where she worked to ask if she could eat at the restaurant when she arrived. But her request was denied, so Salazar decided to pick up food from Burger King on the way. While ordering, Salazar had a hard time communicating with Davis because she was yelling from the passenger seat, her car was loud, and Taylor was talking. Salazar claimed Davis wrongly accused her of being unable to pay for her order before Davis left the window without explanation. Salazar claimed that she then "knock[ed] on the . . . drive-through window . . . to get [Davis'] attention" to figure out what was going on.

Salazar maintained she was simply tired, not "drunk," when she encountered Davis and the officers. Salazar also testified the State's video evidence only showed Taylor was sitting in the passenger side of the car because, by the time Grace arrived at the incident,

4

she told Taylor to scoot over to the passenger seat. Salazar claimed she told Taylor to move because Taylor told Salazar her driver's license was suspended. She also testified she waited for the police to arrive because she "didn't do anything wrong." And she claimed Grace was physically aggressive with her when he was trying to place her under arrest.

After considering the evidence, the jury found Salazar guilty as charged. Salazar was sentenced to a term of 12 months in jail, with 6 months suspended, and then placed on 12 months of probation.

ANALYSIS

Salazar raises only one issue on appeal, claiming the State's evidence was insufficient to convict her of DUI.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. [We do] not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Colson*, 312 Kan. 739, 749-50, 480 P.3d 167 (2021).

A conviction under K.S.A. 2015 Supp. 8-1567(a)(3) requires proof that a person "operat[ed] or attempt[ed] to operate any vehicle . . . while . . . under the influence of alcohol to a degree that render[ed] the person incapable of safely driving a vehicle." Applying those elements to the facts presented, Salazar argues that the State's evidence failed to establish that she (1) drove or tried to drive her car or (2) was so intoxicated she could not safely drive her car.

5

*Salazar Operated or Attempted to Operate Her Vehicle*

Salazar raises only a conclusory statement regarding the State's alleged failure to prove Salazar operated or attempted to operate a vehicle as required under the statute. She claims: "There was . . . no traffic stop involved in the instant case, so there was no direct evidence presented showing [Salazar] driving her vehicle." But Salazar does not explain her argument or support it with any facts or law and thus waives and abandons this claim. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (points raised incidentally and unsupported points deemed waived or abandoned).

Any conviction can be based entirely on circumstantial evidence and inference. *Colson*, 312 Kan. at 750. Contrary to Salazar's conclusory claim, "a DUI conviction, like any conviction, can be supported by direct or circumstantial evidence." *State v. Perkins*, 296 Kan. 162, 167, 290 P.3d 636 (2012). Both direct and circumstantial evidence presented here supports the jury's conclusion Salazar had been operating or attempting to operate her car.

Davis' testimony revealed Salazar was the driver of the car at the drive-through window. Grace's testimony also reflected he observed Salazar standing with one foot in her car, with the car running, when he arrived at the Burger King drive-through window. And Salazar admitted to Grace as he administered the field sobriety tests that she had been driving her car before he arrived.

Salazar also testified the car belonged to her and she rarely allowed anyone else to drive the car because it was difficult to operate. In addition, Salazar admitted she told Taylor to move into the passenger seat to help Taylor avoid police detection. Thus, Salazar's action reflects she took control of the car as it sat at the Burger King drive-through window with the engine running.

Viewing the evidence in the light most favorable to the State, we conclude the jury, as the fact-finder, properly concluded beyond a reasonable doubt Salazar was operating her car.

*Salazar Was Impaired and Incapable of Safely Driving*

Salazar's last argument claims the State failed to produce sufficient evidence of her impairment and inability to safely drive because the evidence included only Grace's, Linn's, and Davis' testimonies regarding her behavior and Grace's testimony reflecting she failed two sobriety tests. Salazar then claims the evidence was outweighed by the evidence showing the incident occurred early in the morning after she got only a little bit of sleep. Salazar recognizes Grace's testimony her breath smelled like alcohol but argues Grace was only able to detect the smell when she "yelled loudly in his face, expelling her breath with extreme force."

With this argument, Salazar is asking us to reweigh the evidence, which we cannot do. See *Colson*, 312 Kan. at 749-50. We decline Salazar's invitation to reweigh the evidence.

We also decline to address Salazar's other attacks on the quality of Grace's testimony as they reflect additional attempts at asking us to reweigh the evidence. The jury heard the evidence and, based on the quality of the evidence and the credibility of the witnesses, determined Salazar was impaired and incapable of safely driving her vehicle. In light of the other direct and circumstantial evidence, there was sufficient evidence for the jury to reasonably find Salazar was under the influence and incapable of safely driving her car.

Affirmed.